## UNITED STATES v. MITCHNECK.
### No. 919.

District Court, M. D. Pennsylvania.

Jan. 16, 1933.

Andrew B. Dunsmore, of Wellsboro, Pa., for the United States.

Ben W. Goldberg, of Wilkes-Barre, Pa., for defendant.

WATSON, District Judge.

This is a rule to show cause why the search warrant issued in this case should not be quashed and the evidence obtained thereunder suppressed.

Prohibition agents were admitted to the residence of Mitchneck on the representation that they were electric refrigerator salesmen and on the representation that they had mutual acquaintances. These representations were entirely false. In order to make the false representations appear to be true and deceive Mitchneck, they produced a note which one of them had written, including the signature, as follows: "Dave, These fellows are friends of mine, Sobey." Sobey was the name of a man who was the employer of Mitchneck a short time previous. After the agents entered the residence of Mitchneck, Mitchneck gave them some drinks of whisky, and before they left, at their request, Mitchneck sold them a pint of whisky for $2. Later, in their application for a search warrant, they used what they had seen in the home of Mitchneck as constituting probable cause. A search warrant was issued, and they formally searched and seized the liquor in the residence.

The question is, Did the evidence secured

226

as above-stated violate the Fourth Amendment of the Constitution of the United States?

 The Fourth Amendment was designed to protect the individual against the abuse of official authority. A search made as the result of an entry by physical force is not necessary in order to violate the amendment.

A search and seizure following an entry into a house of a person suspected of crime, by means of fraud, stealth, social acquaintance, or under the guise of a business call, are unreasonable and violate the Fourth Amendment. Weeks v. United States, 232 U. S. 383, 34 S. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177. That which the agents saw they had no right to see, and, because it was illegally seen, they had no right to use it as the probable cause to secure a search warrant. "The government may not make an entry by means of false representations, search as fully as possible without arousing suspicion, and later make the fruit of that entry and search the basis of what otherwise might be a legal search and seizure. When it appropriates the benefits, it must bear the burdens, of its own illegal acts. The grafting of the original entry and illegal search upon the later search and seizure did not cure what was unlawful in the first entry and search, but, on the contrary, made the whole unlawful. This search and seizure growing out of the false entry was an invasion of the indefeasible right of the personal liberty and private property of the appellants [defendant] and a violation of the Fourth Amendment." Fraternal Order of Eagles, No. 778, Johnstown, Pa., et al. v. United States (C. C. A.) 57 F. (2d) 93, 94.

If such proceeding as that followed by the agents in this case is to be practiced by officials of the government, then no house in America is safe, and the Fourth Amendment fails to accomplish its object in establishing the "right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." Zealous government officials should not do indirectly and by subterfuge what they would not do directly. Courts should watch carefully the constitutional rights of citizens and all stealthy encroachments against such rights. This applies to the administration of the National Prohibition Act just as it does to any other law.

Now, January 16, 1933, the rule granted July 12, 1932, is made absolute, the search warrant is quashed, and the evidence obtained thereunder is suppressed.