**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Gene Grady BULLOCK, a/k/a Grady
Gene Bullock, Defendant-Appellant.**

No. 78–5252
**Summary Calendar.\***

United States Court of Appeals,
Fifth Circuit.

Feb. 21, 1979.

Rehearing Denied March 26, 1979.

---

\* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

**118**

Stuart R. Thomson, Lewis O. Unglesby, Baton Rouge, La., for defendant-appellant.

Donald L. Beckner, U. S. Atty., C. Michael Hill, Asst. U. S. Atty., Baton Rouge, La., for plaintiff-appellee.

Before GOLDBERG, AINSWORTH and HILL, Circuit Judges.

AINSWORTH, Circuit Judge:

Gene Grady Bullock appeals his conviction on five counts of possession of a firearm by a convicted felon in violation of 18 U.S.C.App. § 1202(a)(1).[1] He contends that the firearms in question were discovered and seized by government agents as the result of an unconstitutional search and, furthermore, that he never had an adequate opportunity to present and argue his fourth amendment claim. We reject his contentions and affirm his conviction.

In March of 1977 the Bureau of Alcohol, Tobacco and Firearms began surveillance of appellant Bullock when an anonymous telephone caller stated that Bullock, a convicted felon, was in possession of firearms. After periodic surveillance of Bullock's home from March until August of 1977 yielded no evidence of firearms, an undercover agent, Lloyd Grafton, contacted Bullock under the pretense of interest in joining the Ku Klux Klan, in which both Bullock and his wife were participating at the time. Grafton arranged a meeting which ultimately took place on August 15, 1977, in the parking lot of a shopping center. Bullock took Grafton in his pickup truck from the parking lot to his home, where they went into the den area. There, according to Grafton's testimony, Bullock opened a wooden cabinet, displaying several firearms, including two automatic weapons, in response to Grafton's comment that Bullock needed "protection." According to the testimony of Bullock's wife, however, the undercover agent opened the cabinet on the pretense of admiring it. In either event, uncontradicted testimony indicated that the cabinet was opened in the presence of the defendant, without any coercion by the undercover agent and without any objection by the defendant or his wife.

After spending approximately an hour in the Bullock residence, Bullock drove Grafton back to the parking lot where they met. As they were leaving, according to Graf-

---

1. Bullock was sentenced on three counts to two-year terms of imprisonment, to be served consecutively, and on the remaining two counts to five-year periods of probation, to run concur-rently upon his release from custody, with payment of a $5,000 fine as a special condition of probation.

ton's uncontradicted testimony, Bullock took a pistol from under the seat of his pickup truck and displayed it to Grafton. When they reached the parking lot, Grafton gave a prearranged signal to surveillance agents who immediately arrested Bullock and took the pistol from the car. Subsequently, the agents returned with a warrant to Bullock's house and seized four weapons from the gun cabinet.

On October 12, 1977, the Government indicted Bullock on five counts of possession of a firearm by a convicted felon, referring to the four weapons seized from the cabinet and the pistol seized from the pickup truck. On October 31, 1977, counsel for Bullock filed motions to suppress and to quash the arrest or dismiss the indictment, claiming that the firearms in the cabinet were discovered in an unconstitutional search by the undercover agent, that the pistol was discovered in a search pursuant to an unlawful arrest, and that the arrest was made on probable cause predicated upon the fruits of an illegal search. On joint motion of the parties, a suppression hearing before a magistrate originally scheduled for November 18, 1977, was rescheduled for December 1, 1977.[2] On December 1, when the motions were called, neither the defendant nor his counsel appeared. As a result, in a report dated December 7 and filed December 9, the magistrate recommended to the district court that the defendant's motions be considered abandoned or, in the alternative, that they be denied for failure of the defendant and his counsel to appear at the suppression hearing scheduled for December 1. On December 9, at a hearing on an order to show cause why Bullock's bond should not be revoked, Bullock's counsel explained that on December 1 he was trying another case and that, although his office received notice of the rescheduled suppression hearing, the new date had not been marked on his calendar. After modi-

fying the terms of Bullock's bond, the magistrate expressly informed counsel of the right to file objections to his report with the district court within ten days. No such objections were filed, and, on December 28, the district court denied defendant's various motions, adopting the findings and reasoning of the magistrate.

On February 14, at the start of trial (immediately prior to the Government's opening statement), counsel for Bullock again moved to suppress the evidence (the firearms) seized from his home and car. The motion was summarily denied, without discussion, apparently on the ground that equivalent motions had been previously denied on account of the defendant's failure to appear at the suppression hearing before the magistrate. Subsequently, after direct and cross-examination of the undercover agent, Grafton, Bullock's counsel objected to the introduction of the firearms into evidence. At that point, the district judge sent out the jury and allowed Bullock's counsel to argue that the seizure of the weapons resulted from an unconstitutional search. The gist of the argument was that Grafton acted illegally in discovering the firearms because he never identified himself as an undercover agent and therefore tricked Bullock into revealing the guns. Bullock's counsel made no offer of additional proof of illegality, relying solely on the testimony, on both direct and cross-examination, of Grafton. In particular, counsel made no attempt to contradict Grafton's testimony that Bullock opened the cabinet.

At the conclusion of counsel's argument, the trial judge denied the motion to suppress on two independent grounds. First, reaffirming his earlier decisions on the issue, he concluded that under the Federal Rules of Criminal Procedure the defendant had waived his right to object to the introduction of the firearms by failing to appear at the scheduled suppression hearing.[3]

---

2. The motion and order originally provided, as submitted by the parties, for continuance until November 30. The magistrate, however, continued the hearing until December 1 and returned the order, with the change of date, to counsel for both parties on November 18.

3. Rule 12(b), Fed.R.Crim.P., requires that motions to suppress evidence be raised prior to trial. Rule 12(f) then provides:

(f) Effect of Failure to Raise Defenses or Objections. Failure by a party to raise defenses or objections or to make requests which

Second, reaching the merits of the fourth amendment argument, he concluded that the discovery of the weapons was not tainted by the mere fact that Grafton acted as an undercover agent and, furthermore, that Bullock had waived his fourth amendment rights when he voluntarily permitted the agent into his home and voluntarily showed him the guns. After denial of the motion to suppress, the trial continued. The defendant's counsel made no further motion for suppression of the firearms and made no further motion for acquittal at the conclusion of the trial.

In his brief on appeal, Bullock (represented by new counsel) argues that he deserves another chance to present his fourth amendment claim for consideration by the trial judge. If given that opportunity, he claims that he can establish that Grafton, the undercover agent, had been informed that the guns were in the cabinet, that he denied to Grafton any knowledge of the weapons, and that Grafton opened the gun cabinet under the pretense of acting curious as to how it opened. Furthermore, he claims that he can establish that he never showed Grafton the pistol in the car. Of course, the underlying premise is that by establishing the above facts he will have established, as a matter of law, that the firearms were discovered as a result of illegal searches of his cabinet and his pickup truck. We conclude, however, that Bullock had ample opportunity before and during the trial to develop his fourth amendment claim.[4] Having failed to take advantage of that opportunity, Bullock has no right at this late date to relitigate his various motions to suppress, which were properly denied by the trial court.

■ When neither Bullock nor his attorney appeared at the scheduled pretrial suppression hearing before the magistrate, and when no objection to the magistrate's rec-

ommendations were filed with the district judge within the time allowed, the district judge acted within his authority in holding that Bullock had thereby waived objections to introduction of the firearms into evidence. *See* Fed.R.Crim.P. 12(f). Furthermore, although empowered to grant relief from the waiver for cause shown, the district court in this case acted within its discretion in denying such relief. Defendant's trial counsel offered an excuse for his failure to appear before the magistrate but has not, to this date, shown cause for his failure to file objections to the magistrate's report with the district judge. Thus, the district court would not have abused its discretion under Rule 12(f) if it had denied defendant's various suppression motions relying solely on defendant's failure to comply with pretrial procedure. *See, e. g., United States v. Echols*, 5 Cir., 1978, 577 F.2d 308; *United States v. Wood*, 9 Cir., 1976, 550 F.2d 435, 439–40.

■ In fact, the district court did not rely solely on the defendant's pretrial failings but instead entertained argument on the merits of the suppression motion at trial. After direct and cross-examination of the undercover agent, the trial judge sent the jury out and allowed defense counsel to make his fourth amendment argument. The gist of the argument, as stated above, was that Bullock was unaware of the true identity of the undercover agent and was therefore tricked into displaying the firearms in the cabinet and the pistol in the pickup truck. Defense counsel proffered no evidence beyond the testimony of Grafton and made no claim that Grafton, rather than Bullock, opened the cabinet. In light of the evidence before him, the district judge was clearly justified in concluding that Bullock voluntarily displayed the firearms in the cabinet and the pickup to Graf-

---

must be made prior to trial, at the time set by the court pursuant to subdivision (c), or prior to any extension thereof made by the court, shall constitute a waiver thereof, but the court for cause shown may grant relief from the waiver.

4. We note that on appeal, represented by new counsel, Bullock has evidently knowingly and deliberately elected not to argue that he was denied effective counsel at trial. See Defendant's Response to Supplemental Brief of the Government at 5.

ton.[5] The mere fact that Grafton concealed his true identity did not nullify Bullock's waiver of fourth amendment rights, *see Lewis v. United States,* 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966), and the trial judge therefore correctly denied the motion to suppress.

Thus, in sum, Bullock had an opportunity to present his fourth amendment claim prior to trial but failed to appear at the suppression hearing and failed to object to the magistrate's report within the time allowed. He had another opportunity at trial when the judge heard argument on the motions to suppress, out of hearing of the jury, and properly denied the motions in light of the evidence before him. Now, he seeks still a third opportunity, claiming, in pertinent part, that he can establish that the undercover agent opened the cabinet, knowing the guns to be within,[6] and that he never showed the pistol in the pickup truck to the agent. In support of those claims, he has cited no concrete evidence, and certainly no evidence which was not available to him both before and during trial.[7] Thus, from the existing record and the briefs on appeal, we can discern no compelling justification for allowing Bullock further opportunity to develop his fourth amendment claim.

Therefore, since the record before us provides ample support for the district court's conclusion that Bullock voluntarily displayed the firearms to the undercover agent, we reject appellant's fourth amendment claim and affirm his conviction.

AFFIRMED.

5. Later in the trial, Bullock's wife testified that Grafton opened the cabinet on the pretense of admiring it. Presumably, she would have testified to that effect earlier, when the court heard argument on the motion to suppress, but defense counsel never proffered her testimony. Subsequent to her testimony, no further motion to suppress or motion for acquittal was made. Testimony by Bullock's wife on another issue in the trial was discredited by a rebuttal witness for the Government. Her overall credibility as a witness for the defendant is therefore highly suspect.

6. We do not suggest that Bullock would necessarily prevail in his fourth amendment argument merely by establishing that the agent opened the cabinet, without objection from Bullock and without any evidence of surreptitious or coercive conduct in doing so.

7. It would appear from the record and the briefs of the parties that in an additional hearing Bullock could, at best, proffer his own and his wife's statements contradicting the agent's testimony that the firearms were voluntarily displayed. Of course, such statements could have easily been proffered earlier and were not.

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.