418 A.2d 1378

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Craig R. MORRISON.**

Superior Court of Pennsylvania.

Argued March 23, 1979.

Filed March 21, 1980.

William R. Hagner, Assistant District Attorney, Paoli, for Commonwealth, appellant.

Fred T. Cadmus, III, West Chester, for appellee.

Before CERCONE, President Judge, and PRICE, VAN der VOORT, SPAETH, HESTER and WIEAND,* JJ.

PRICE, Judge:

The instant appeal by the Commonwealth is from an order by Judge Thomas A. Pitt, Jr., of the Chester County Court of Common Pleas, suppressing evidence seized pursuant to a warrant executed at appellee's residence. After reviewing the record, we find no violation of appellee's fourth amendment right to be free from an unreasonable search and seizure, and reverse the order of the trial court.

During the first week of October 1977, Trooper Clifford Shaw, a narcotics investigator with the Pennsylvania State Police, went to the residence of appellee in West Goshen Township, Chester County. Appellee was not at home, and Trooper Shaw spoke with his sister. The trooper stated to appellee's sister that he had heard that appellee was in the process of converting a barn located on the premises into a home, and misrepresented that he was contemplating a similar conversion of a barn that he owned. He requested permission to examine the structure to get an idea how the work should be performed. The trooper was in plain clothes and at no time did he identify himself as a member of the Pennsylvania State Police. Permission was granted, and Trooper Shaw examined the outside of the barn, although he did not venture inside. No incriminating evidence was obtained. The trooper did not explain why he was investigating appellee during the first week in October 1977.

As early as October 15, 1976, and again on October 17, 1977, Trooper Shaw received information from two sources indicating that appellee was storing large quantities of drugs in the barn in West Goshen Township. On November 1, 1977, Trooper Shaw returned to appellee's residence. This time appellee was present and working outside the barn. Trooper Shaw, again in plain clothes, gave a false name and

* Judge DONALD E. WIEAND is sitting by special designation.

misrepresented to appellee that he had purchased a barn and was interested in converting it into a photography studio, but that he lacked the technical expertise to carry out the planned conversion. Appellee showed the trooper various items of craftwork on the outside of the barn. Trooper Shaw then requested permission to enter and inspect the interior. Appellee refused, explaining that the interior was rather dirty, and that he wanted to delay any inspection until it could be cleaned. Without any further request by the trooper, appellee then approached a large shuttered window, pulled open the shutters and invited Trooper Shaw to inspect the interior. Making a visual inspection through the window, Trooper Shaw observed a quantity of marijuana.

Later that same day, Trooper Shaw secured a search warrant. On November 2, 1977, the warrant was executed and approximately eighty pounds of marijuana recovered from appellee's barn. On February 28, 1978, appellee filed a motion to suppress the evidence seized during the November 2, 1977 raid. At a hearing on April 20, 1978, appellee testified that his consent to Trooper Shaw being on the premises was the direct result of the trooper's failure to properly identify himself and his misrepresentation regarding his purpose in wishing to view the barn. The trial court ruled that the evidence was inadmissible based, *inter alia*, upon the involuntary nature of the appellee's consent. We disagree and hold that the intrusion was with consent and was not an unreasonable invasion of appellee's fourth amendment right of privacy.

In determining whether appellee's consent to the visual search of his premises, albeit procured through the fraudulent representation of Trooper Shaw, was nevertheless voluntary, we begin with the basic tenet that the fourth amendment is intended to safeguard from unreasonable government intrusions those areas in which a person displays a reasonable expectation of privacy. *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977); *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d

576 (1967). With few exceptions, an intrusion into a place of privacy may not be effected absent a warrant issued based upon probable cause. *See, e. g., Mincey v. Arizona*, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978); *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). One of these exceptions is when a criminal suspect consents to the search. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Vale v. Louisiana*, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970); *Katz v. United States, supra.* Instantly, we must determine whether consent may be deemed "voluntary" when procured by a police official who misrepresents both his identity and purpose.

In *Schneckloth v. Bustamonte, supra*, the Supreme Court was required to define the voluntariness of consent for fourth amendment purposes. In that case, the police had stopped a vehicle containing a driver and five passengers for a minor traffic offense. The police requested and obtained permission to search the trunk of the vehicle, and incriminating evidence against one of the passengers was discovered. The issue on appeal was whether permission to search could be deemed voluntary in the absence of an express warning that the suspect had a right to refuse that permission. In rejecting petitioner's contention that the right to be free from an unreasonable search and seizure was analogous to the fifth amendment provision against self–incrimination and the sixth amendment right to counsel, thus requiring a modified *Miranda* warning prior to the consensual search, the Supreme Court undertook an extensive analysis regarding the fourth amendment protection.

"There is a vast difference between those rights that protect a fair criminal trial and the rights guaranteed under the Fourth Amendment. Nothing, either in the purposes behind requiring a 'knowing' and 'intelligent' waiver of trial rights, or in the practical application of such a requirement suggests that it ought to be extended to the constitutional guarantee against unreasonable searches and seizures.

A strict standard of waiver has been applied to those rights guaranteed to a criminal defendant to insure that he will be accorded the greatest possible opportunity to utilize every facet of the constitutional model of a fair criminal trial . . . . .

The protections of the Fourth Amendment are of a wholly different order, and have nothing whatever to do with promoting the fair ascertainment of truth at a criminal trial. Rather, as Mr. Justice Frankfurter's opinion for the Court put it in *Wolf v. Colorado*, 338 U.S. 25, 27, 69 S.Ct. 1359, 93 L.Ed. 1782, the Fourth Amendment protects the 'security of one's privacy against arbitrary intrusion by the police . . . .' In declining to apply the exclusionary rule of *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R.2d 933, to convictions that had become final before rendition of that decision, the Court emphasized that 'there is no likelihood of unreliability or coercion present in a search–and–seizure case,' *Linkletter v. Walker*, 381 U.S. 618, 638, 85 S.Ct. 1731, 14 L.Ed.2d 601. . . . The Fourth Amendment 'is not an adjunct to the ascertainment of truth.' The guarantees of the Fourth Amendment stand 'as a protection of quite different constitutional values—values reflecting the concern of our society for the right of each individual to be let alone. To recognize this is no more than to accord those values undiluted respect.' *Tehan v. United States ex rel. Shott*, 382 U.S. 406, 416, 86 S.Ct. 459, 15 L.Ed.2d 453." *Id.* at 241–42, 93 S.Ct. at 2055.

In determining the proper test for voluntariness under the fourth amendment, the Court established the following guidelines:

"[W]hether a consent to a search was in fact 'voluntary' or was the product of *duress or coercion*, express or implied, is a question of fact to be determined from the totality of all the circumstances.

. . . . .

. . . [I]f under all the circumstances it has appeared that the consent was not given voluntarily—that it

was *coerced by threats or force,* or granted only in submission to a claim of lawful authority—then we have found the consent invalid and the search unreasonable." *Id.* at 227, 233, 93 S.Ct. at 2048, 2051 [emphasis added].

Therefore, the voluntariness of a defendant's consent to a search is determined by whether the consent was procured through force or other coercion. Because appellee has not claimed that his consent to the search by Trooper Shaw was the result of force or coercion, we cannot conclude that the consent was involuntary under the standards of *Schneckloth v. Bustamonte, supra.* Nor do we find any trace of inherent coercion, since the nature of the request to view the interior of the barn carried an implication that appellee was free to prohibit such a view. *See United States v. Griffin,* 530 F.2d 739 (7th Cir. 1976); *cf. Bumper v. North Carolina,* 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968); *Johnson v. United States,* 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948); *Amos v. United States,* 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654 (1921) (consent involuntary when given in response to lawful claim of authority). Finally, we find distinguishable those cases cited by appellee in which the activity of the undercover agent went beyond a mere misrepresentation to gain access, *Gouled v. United States,* 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647 (1921) (rummaging through private papers), or were decided prior to the decision in *Schneckloth v. Bustamonte, supra,* regarding the voluntariness aspect of a fourth amendment search.[1] *See Fraternal Order of Eagles v. Unit-*

1. We note that although several courts have decided, subsequent to *Schneckloth v. Bustamonte, supra,* that fraud and misrepresentation renders involuntary a consensual search, *see, e. g., United States v. Griffin,* 530 F.2d 739 (7th Cir. 1976); *United States v. Rothman,* 492 F.2d 1260 (9th Cir. 1974); *United States v. Robson,* 477 F.2d 13 (9th Cir. 1973); *In re Robert T.,* 8 Cal.App.3d 990, 88 Cal.Rptr. 37 (1970), in most of these cases the discussion regarding fraud and misrepresentation was dicta and unrelated to the specific events under scrutiny. Moreover, as authority for such a conclusion, the courts typically cited *Gouled v. United States, supra,* in which an undercover agent rummaged through the defendant's papers in his absence, and *Bumper v. North Carolina, supra,* in which consent to search was obtained in response to a misrepresentation by the police that they had a valid search warrant and the person was without authority to resist their search. Therefore, the dicta exposed by the courts is of questiona-

*ed States,* 57 F.2d 93, (3d Cir. 1932) ("false representations" prohibited); *United States v. Reckis,* 119 F.Supp. 687 (D.Mass.1954); *United States v. Mitchneck,* 2 F.Supp. 225 (M.D.Pa.1933) ("fraud and stealth" prohibited); *Commonwealth v. Wright,* 411 Pa. 81, 190 A.2d 709 (1963) ("deceit and misrepresentation" prohibited); *Commonwealth v. Szukics,* 212 Pa.Super. 517, 243 A.2d 198 (1968) (dicta) ("stealth deceit or misrepresentation" prohibited).

We note, moreover, that the nature of certain crimes permits, and even requires, the police to resort to various forms of stealth to adequately perform their investigative functions. Thus, trickery has been recognized as a permissible means for securing confessions, *see, e. g., Frazier v. Cupp,* 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969); *Commonwealth v. Jones,* 457 Pa. 423, 322 A.2d 119 (1974); *Annot.,* 99 A.L.R.2d 772 (1965), for gaining the confidence of criminal perpetrators by undercover agents, *see, e. g., Lewis v. United States,* 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966); *United States v. Glassel,* 488 F.2d 143 (9th Cir. 1973), *cert. denied,* 416 U.S. 941, 94 S.Ct. 1945, 404 L.Ed.2d 292 (1974), and in the execution of a search warrant. *See, e. g., Commonwealth v. Duncan,* 257 Pa.Super. 277, 390 A.2d 820 (1978) (opinion in support of affirmance); *Commonwealth v. Regan,* 254 Pa.Super. 555, 386 A.2d 89 (1978). Therefore, based upon the totality of the circumstances, we cannot conclude that the ruse employed by Trooper Shaw was so inherently coercive as to render appellee's consent involuntary, nor do we believe that the consent was obtained in a manner such that the evidence seized should be deemed unreliable.

 Finally, we do not believe that the investigative technique employed by Trooper Shaw was so egregious as to

ble value, and the authority for that dicta is wholly inapplicable to the instant case. Other courts that have recently confronted the issue have impliedly held that a misrepresentation made to secure permission to conduct a search does not render the permission involuntary. *Cf., United States v. Raines,* 536 F.2d 796 (8th Cir.), *cert. denied,* 429 U.S. 925, 97 S.Ct. 327, 50 L.Ed.2d 293 (1976); *United States v. Novello,* 519 F.2d 1078 (5th Cir. 1975), *cert. denied,* 423 U.S. 1060, 96 S.Ct. 797, 46 L.Ed.2d 651 (1976).

warrant the invoking of the exclusionary doctrine to preserve the integrity of the judicial system or discourage intolerable police conduct. *See Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974); *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *Commonwealth v. Musi*, 486 Pa. 102, 404 A.2d 378 (1979). In the instant case, the investigating officer had a reasonable suspicion that appellee was storing marijuana and other drugs in his barn. In an effort to gather further evidence to either substantiate or dispel his suspicion, Trooper Shaw assumed an undercover role and resolved his uncertainty upon viewing the interior of the appellee's barn. In an analogous context involving an undercover agent, the Supreme Court has stated:

> "Neither this Court nor any member of it has ever expressed the view that the Fourth Amendment protects a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it.
> . . . 'The risk of being overheard by an eavesdropper or betrayed by an informer or *deceived as to the identity of one with whom one deals* is probably inherent in the conditions of human society . . . .' [*Lopez v. United States*, 373 U.S. 427 [83 S.Ct. 1381, 10 L.Ed.2d 462]], at 465, 10 L.Ed.2d [462,] 486." *Hoffa v. United States*, 385 U.S. 293, 302–03, 87 S.Ct. 408, 413, 17 L.Ed.2d 374 (1966).

*See Lewis v. United States, supra; Commonwealth v. Herron*, 243 Pa.Super. 319, 365 A.2d 871 (1976). Appellee attempts to distinguish those cases involving undercover agents who conceal their identity to purchase drugs from a willing seller from the instant case in which both the identity of the agent and his purpose were concealed. It is appellee's contention that in the *Hoffa, Lewis*, and *Herron* cases cited above, the defendants fully intended to reveal the incriminating evidence to the informants and were only mistaken regarding their undercover role. In contrast, appellee claims that he only intended to permit Trooper Shaw

to view the interior of his barn for purposes of observing the interior decorations, but did not intend to reveal the incriminating evidence, and that the trooper's action in observing marijuana amounted to a "surreptitious and general search" beyond that which was authorized. We find this claim to be without merit and reject appellee's assertion that his unarticulated *subjective* intent is the touchstone by which a consensual search may be conducted. *See United States v. Raines*, 536 F.2d 796 (8th Cir.), *cert. denied*, 429 U.S. 925, 97 S.Ct. 327 (1976). Indeed, the supreme court of this Commonwealth has determined that even a policeman's misrepresentation regarding his subjective intent is permissible. *See Commonwealth v. Brown*, 437 Pa. 1, 261 A.2d 879 (1976), *aff'd sub nom. on habeas corpus, Brown v. Brierley*, 438 F.2d 954 (3d Cir.), *cert. denied*, 402 U.S. 997, 91 S.Ct. 2182, 29 L.Ed.2d 163 (1971). As this court stated in *Commonwealth v. Weimer*, 262 Pa.Super. 69, 75, 396 A.2d 649, 651 (1979), "One cannot envelope [sic] oneself with the cloak of fourth amendment protection while leaving gaping holes in the fabric."

Therefore, we conclude that appellee's consent to the search was voluntary and was not procured through force or coercion, express or implied, and that the investigative technique employed by Trooper Shaw was not contrary to public policy.

The order of the trial court suppressing the evidence is reversed, and the case remanded for further proceedings consistent with this opinion.

SPAETH, J., files a concurring opinion in which WIEAND, J., joins.

SPAETH, Judge, concurring:

I agree with the majority that we should reverse the order of the lower court. However, I am unable to join the majority's opinion, for I am unable to discern from it by what rule the majority would determine the propriety of police deception. In its most obvious interpretation, the opinion seems to say that the only limits on police deception

are that the deception must not amount to "force or other coercion." *See in particular* Majority at 1380, 1381 n.1. This proposition, however, is so plainly contrary to settled law that one must ask whether perhaps the opinion is not intended to mean something else. There is no reason for such ambiguity. Examination of the pertinent cases will disclose the limits that have been imposed on police deception. Admittedly, the exact extent of those limits has not been settled, and cases of police deception may be imagined that do not fall within the decided cases, and in which it would be difficult to say whether the limits had or had not been exceeded. The present case, however, is not such a case.

Perhaps the principal difficulty with the majority's opinion is its reliance on *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).[1] *Schneckloth*, however, is not in point. As the majority notes, *Schneckloth* involved an automobile search conducted by uniformed police officers. The issue before the Supreme Court was whether the passengers' consent to the automobile search could be deemed voluntary in the absence of a warning by the officers that the passengers had the right to withhold their consent and refuse to permit the automobile to be searched. The issue before us, however, is the propriety of police deception. In *Schneckloth* there was no police deception; accordingly, the Court had no occasion to address, and did not address, the issue before us. The Court did address

1. The majority has failed to note that this court has jurisdiction to hear this appeal since the Commonwealth has stated in its brief that if the lower court's order is affirmed, it cannot effectively prosecute appellee. The record is not inconsistent with this statement. *See Commonwealth v. Kunkle*, 268 Pa.Super. 299, 408 A.2d 475 (1979).

Also, it should be noted that the ultimate issue before this court concerns the validity of the search warrant that was executed on Nov. 2, 1977. Probable cause for the issuance of that warrant was based on information Trooper Shaw received from undisclosed informants and on Trooper Shaw's observations at appellee's residence on Nov. 1. Shaw's earlier visit at appellee's residence during the first week in October is not mentioned in the search warrant, and there is no showing that the observations made during that visit influenced the issuance of the warrant.

the issue before us in the two other cases–*Hoffa v. United States*, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966), and *Lewis v. United States* 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966)–and those cases should be the starting point of our discussion.[2]

In *Lewis*, the Supreme Court held that the fourth amendment was not violated when a narcotics agent, by misrepresenting his identity and stating his willingness to purchase narcotics, got himself invited into the defendant's home, where an unlawful narcotics transaction was then consummated. The Court reasoned that the narcotics involved in the transaction could be introduced in evidence against the defendant because the agent during his visits to the defendant's home did not "see, hear or take anything that was not contemplated, and in fact intended, by [the defendant] as a necessary part of his illegal business," 385 U.S. at 210, 87 S.Ct. at 427. In *Hoffa*, the Court defined the issue as "whether evidence obtained by the Government by means of deceptively placing a secret informer in the quarters and councils of a defendant during one criminal trial so violates the defendant's Fourth, Fifth and Sixth Amendment rights that suppression of such evidence is required in a subsequent trial of the same defendant on a different charge." In concluding that suppression was not required, the Court held that the fourth amendment does not protect a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it. *Accord: United States v. White*, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971); *On Lee v. United States*, 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270 (1952).

In both *Lewis* and *Hoffa*, the Supreme Court pointed out that in some instances police deception may violate the

---

**2.** The majority correctly perceives that the decisions in *Fraternal Order of Eagles v. United States*, 57 S.E.2d 93 (3d Cir. 1932); *United States v. Reckis*, 119 F.Supp. 687 (D.Mass.1954); and *United States v. Mitchneck*, 2 F.Supp. 225 (M.D.Pa.1933), have uncertain precedential value. The continuing validity of those cases, however, was not undercut by *Schneckloth*, as the majority supposes, but by *Lewis* and *Hoffa*.

fourth amendment. In particular, the Court contrasted the situations in those cases with the situation in *Gouled v. United States*, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647 (1921). In *Gouled*, a business associate of the defendant's, under the direction of federal officers, pretended to pay a friendly call upon the defendant, and upon gaining admission to the defendant's office, in the defendant's absence seized and carried away documents belonging to the defendant. This search and seizure, the Court held, violated the fourth amendment.

It is apparent that the present case falls somewhere between, on the one hand, *Lewis* and *Hoffa*, and on the other, *Gouled*. In contrast to the situation in *Lewis* and *Hoffa*, appellee did not attempt to engage Trooper Shaw in an illegal transaction, or to confide to Trooper Shaw his wrongdoing. Appellee's relationship with the trooper was that of a neighbor displaying his home in order to give tips on home improvement. Thus, appellee has a better argument than did the defendant in *Lewis* or *Hoffa*. In contrast to the situation in *Gouled*, Trooper Shaw did not exceed the scope of appellee's invitation to observe his home, and did not conduct a surreptitious search and seizure.[3] When appellee opened the shutters of his home, the marijuana inside was revealed for the trooper to see. Thus, here the police have a better argument than did the police in *Gouled*.

This contrast suggests that a helpful way to go about deciding the present case is to consider whether appellee's situation was *different enough* from the situation in *Lewis* and *Hoffa* to require a different result. In undertaking this consideration, the cases following *Lewis* and *Hoffa* may be divided into two groups.

The first group of cases is not particularly helpful, for it comprises cases involving an illegal business transaction between a defendant and an undercover agent, *i.e.*, cases

3. Although appellee presented evidence at the suppression hearing that Trooper Shaw did exceed the scope of his invitation, the suppression court found credible Trooper Shaw's relation of events, *i. e.*, that he observed only those areas appellee allowed him to observe.

substantially identical to *Lewis* and *Hoffa*. *United States v. Oakes*, 564 F.2d 384 (10th Cir. 1977), *cert. denied*, 435 U.S. 926, 98 S.Ct. 1493, 55 L.Ed.2d 521 (1978); *United States v. Hutchinson*, 488 F.2d 484 (8th Cir. 1973), *cert. denied sub nom. Ennis v. United States*, 417 U.S. 915, 94 S.Ct. 2616, 41 L.Ed.2d 219 (1974); *United States v. Glassel*, 488 F.2d 143 (9th Cir. 1973), *cert. denied*, 416 U.S. 941, 94 S.Ct. 1945, 40 L.Ed.2d 292 (1974); *United States v. Ryles*, 451 F.2d 190 (3d Cir. 1971), *cert. denied*, 406 U.S. 926, 92 S.Ct. 1796, 32 L.Ed.2d 127 (1972); *United States v. Boggus*, 411 F.2d 110 (9th Cir. 1969); *United States v. Haden*, 397 F.2d 460 (7th Cir. 1968), *cert. denied* 396 U.S. 1027, 90 S.Ct. 574, 24 L.Ed.2d 523 (1970); *Bickar v. Gray*, 380 F.Supp. 804 (N.D.Ohio 1974).

The second group of cases, however, is helpful, for it comprises cases in which the federal courts have extended the rationale in *Lewis* and *Hoffa* to hold that when a defendant invites into his home an undercover agent to consummate what is a lawful transaction, but in ensuing discussion directs the agent's attention to incriminating evidence, the agent's observation of the evidence does not constitute an unlawful search and seizure. Thus, in *United States v. Guidry*, 534 F.2d 1220 (6th Cir. 1976), an undercover agent, disguised as a "helper," accompanied the service representative of a printing company on a visit to the defendant's home. The pretended purpose of the representative's visit was to inspect a part of defendant's printing press the defendant was attempting to sell. The real purpose was to enable the undercover agent to inspect the press to determine whether it had been used in counterfeiting. The Court held that the agent's observations of the press during the visit were lawful. Similarly, in *United States v. Bullock*, 590 F.2d 117 (5th Cir. 1979), an undercover agent pretended to the defendant to be interested in joining the Ku Klux Klan. The defendant invited the agent into his home, where he opened a wooden cabinet and displayed to the agent several firearms. The Court held that the agent's observation of the firearms was a proper basis for a search warrant for their seizure.

Given this evolution of the cases, it is apparent that the issue we must decide is whether the *Guidry–Bullock* extension of *Lewis* and *Hoffa* encompasses the present case. In approaching this question, it is important to emphasize how very limited the *Guidry–Bullock* extension is. The federal courts have not forgotten the warning in *Lewis, Hoffa,* and *Gouled* that police deception will sometimes vitiate a defendant's consent to a search. Thus, in criminal prosecutions for income tax evasion, it is a well–established rule that "a consent search is unreasonable under the Fourth Amendment if the consent was induced by the deceit, trickery or misrepresentation of the Internal Revenue Agent." *United States v. Robson,* 477 F.2d 13, 17 (9th Cir. 1973). *Accord: United States v. Tweel,* 550 F.2d 297 (5th Cir. 1977); *United States v. Rothstein,* 530 F.2d 1275 (5th Cir. 1976); *United States v. Dawson,* 486 F.2d 1326 (5th Cir. 1973); *United States v. Bland,* 458 F.2d 1 (5th Cir.), *cert. denied,* 409 U.S. 843, 93 S.Ct. 43, 34 L.Ed.2d 83 (1972); *United States v. Jaskiewicz,* 433 F.2d 415 (3d Cir. 1970), *cert. denied* 400 U.S. 1021, 91 S.Ct. 583, 27 L.Ed.2d 632 (1971); *United States v. Tonahill,* 430 F.2d 1042 (5th Cir.), *cert. denied,* 400 U.S. 943, 91 S.Ct. 242, 27 L.Ed.2d 247 (1970); *United States v. Prudden,* 424 F.2d 1021 (5th Cir.), *cert. denied* 400 U.S. 831, 91 S.Ct. 62, 27 L.Ed.2d 62 (1970); *Spahr v. United States,* 409 F.2d 1303 (9th Cir.), *cert. denied,* 396 U.S. 840, 90 S.Ct. 102, 24 L.Ed.2d 91 (1969); *Cohen v. United States,* 405 F.2d 34 (8th Cir. 1968), *cert. denied,* 394 U.S. 943, 89 S.Ct. 1274, 22 L.Ed.2d 478 (1969); *United States v. Sclafani,* 265 F.2d 408 (2d Cir.), *cert. denied,* 360 U.S. 918, 79 S.Ct. 1436, 3 L.Ed.2d 1534 (1959); *United States v. Lewis,* 274 F.Supp. 184 (S.D.N.Y.1967). This rule, moreover, is but a corollary of the general rule, applicable in all criminal prosecutions, that "[w]hen an agent assumes a particular pose in order to gain entry into certain premises and then obtains information by engaging in activity not generally expected of one assuming that pose, that information is illegally obtained." *United States v. Ressler,* 536 F.2d 208, 211 (7th Cir. 1976). *See also United States v. Griffin,* 530 F.2d 739, 743 (7th Cir. 1976) ("Trickery, fraud, or misrepresentation on the part of the

police to gain entry naturally undermines the voluntariness of any consent").[4]

Nevertheless, it is clear, in my opinion, that the *Guidry–Bullock* extension of *Lewis* and *Hoffa* does encompass the present case. While this case differs from *Guidry* and *Bullock* to the extent that in each of those cases the defendant *specifically directed* the agent's attention to the incriminating evidence–in *Guidry* the printing press, in *Bullock* the firearms–whereas in this case appellee merely opened the shutters of his residence so that Trooper Shaw could inspect the carpentry inside, the difference is inconsequential. When appellee opened the shutters, the marijuana was in plain view for the trooper to see. Even though appellee did not *specifically direct* the trooper's attention to the marijuana, he *necessarily had to anticipate* that the trooper would see it if the shutters were opened. To state the point in a different way: In *Guidry* the defendant knew that he was using his printing press for counterfeiting. He nevertheless permitted the undercover agent to examine the press. No doubt he did so because he believed that the agent was a private printer, who would not know or be able to discover that the press was being used for counterfeiting. This

---

**4.** As noted at the outset of this opinion, the majority opinion implies, if it does not say, that under present law police deception will never render involuntary a defendant's consent to search, at least so long as the deception falls short of "force or other coercion." Majority at 1380, 1381 n.1. The cases the majority opinion cites do not support this proposition. In *United States v. Raines*, 536 F.2d 796 (8th Cir.), *cert. denied*, 429 U.S. 925, 97 S.Ct. 327, 50 L.Ed.2d 293 (1976), deceit was used by an undercover agent only to gain entry into the defendant's house. Once inside, and before any incriminating evidence was disclosed, the agent revealed his official identity. In *United States v. Novello*, 519 F.2d 1078, 1081 (5th Cir. 1975), *cert. denied*, 423 U.S. 1060, 96 S.Ct. 797, 46 L.Ed.2d 651 (1976), the court stated: "Since it is plain that Novello had no reasonable expectation of privacy in the common area concerned, the consent analysis which would otherwise have been necessary need not be undertaken and we express, of course, no view upon it." Moreover, it may be noted that having implied that fraud and deceit will never vitiate consent to search, the majority opinion then qualifies, or contradicts, the implication by referring to "investigative technique[s] . . . contrary to public policy," Majority slip op. at 8, without, however, identifying what such techniques might be.

belief, however, was held to be misplaced. Here, appellee knew that he had marijuana. He nevertheless permitted the undercover agent to see it. No doubt he did so because he believed that the agent was a photographer, who would not recognize the marijuana as marijuana, or if he did recognize it, would not tell anyone about it. This belief was misplaced. As a matter of law, as it has evolved in the federal courts,[5] I see no reason to treat the defendant's misplaced belief in *Guidry* differently than appellee's misplaced belief here, simply because in *Guidry* the defendant directed the agent's attention more specifically do the incriminating evidence than appellee did; appellee's direction of Trooper Shaw's attention to the marijuana was specific enough.

Although this case does not go beyond *Guidry* and *Bullock*, one may easily suppose a case that would. For example, suppose that an undercover agent enters a suspect's home under the pretense of conducting lawful business, and during the visit, while within the bounds of the suspect's invitation to enter the home, observes evidence the suspect

5. During the suppression proceedings below, appellee alleged the violation of his fourth amendment rights only; he did not allege any violations under our state constitution. Therefore, this court has no occasion to decide in this case whether our state constitution goes further than the federal constitution in imposing limits on the use of police deception. *See Commonwealth v. DeJohn*, 486 Pa. 32, 403 A.2d 1283 (1979) (case where Article I, section 8, of the state constitution provided greater safeguards than the federal constitution). *Commonwealth v. Brown*, 437 Pa. 1, 261 A.2d 879 (1970), however, may serve as a starting point in determining how a state court would interpret the state constitution.

In this regard it may be noted that the federal law has changed, and that the result of this case would have been different had the case arisen prior to the decisions in *Lewis* and *Hoffa*. In *United States v. Mitchneck*, 2 F.Supp. 225 (M.D.Pa.1933), prohibition agents were admitted to the residence of Mitchneck on the representation that they were refrigerator salesmen and that they had mutual acquaintances with Mitchneck. The Court held that the deceit of the agents vitiated the consent to enter. To similar effect are *Fraternal Order of Eagles v. United States*, 57 F.2d 93 (3d Cir. 1932), and *United States v. Reckis*, 119 F.Supp. 687 (D.Mass.1954). This change in the federal law occurred because the court was persuaded in *Lewis* and *Hoffa* that effective enforcement of the vice, liquor and narcotics laws required greater use of police deception.

had reason to believe would not be observed. *See generally* II W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 8.2(m) (1978). I have not seen a federal case involving this sort of situation. To date, the federal cases have gone no further than to hold that one who knowingly reveals incriminating evidence runs the risk that the person to whom the evidence is revealed is a government agent who will recognize the evidence and will report his observations of it.

The problem of defining the limits to be set on the use of police deception is one of the most difficult problems of the criminal law. It may well be that certain sorts of criminals cannot be convicted unless the police are permitted to resort to deception.[6] The question is then presented: Is it worth convicting them? For when the police are permitted to resort to deception, there are losses as well as gains. The gains may be considerable—for example, the detection and elimination of a carefully organized traffic in drugs. But the losses may also be considerable. The law of search and seizure is not concerned with protecting the criminal's right of privacy but the honest citizen's right. If we are to be able to enjoy liberty and pursue happiness, we must know what part of our world is real and what part is illusion—that our home is our castle, and not a broadcasting center for hidden police transmission devices; that a repairman is a repairman, a business associate a business associate, and not a police agent. Permit the police to make our world illusion, and no one, neither criminal nor honest citizen, will be free. Thus in every case involving police deception the court must balance the gains and losses incident to permitting the deception. Given the difficulty and importance of striking the proper balance, the court should bend every effort to decide each case only on its facts, never going further than it must, and never indulging in broad language that may be misunderstood and so encourage unwholesome practices. I have tried to apply these principles in deciding the present case. Doing so, I have concluded that on its facts, the case

6. *See* note 5, *supra*.

presents a use of police deception not at all novel, and within the decided cases. Beyond that, I choose not to go.

I concur in the majority's order reversing the order of the lower court.

WIEAND, J., joins in this concurring opinion.