Commonwealth of Pennsylvania, Pennsylvania Liquor Control Board, Appellant v. Kingston Realty, Inc., Appellee.

Argued June 4, 1984, before Judges ROGERS, COLINS and BARBIERI, sitting as a panel of three.

*Felix Thau,* Assistant Counsel, with him, *Gary F. DiVito,* Chief Counsel, and *J. Leonard Langan,* for appellant.

*Gaele McLaughlin Barthold,* Assistant District Attorney, Chief, Prosecution Appeals, with her, *Eric B. Henson,* Deputy District Attorney, for appellee.

OPINION BY JUDGE COLINS, November 21, 1984:

In this appeal, we must determine whether the police power of the Commonwealth, as exercised through the State Police and a lawfully elected District Attorney, may be preeminent to certain regulatory powers of the State Liquor Control Board (Board).

On June 17, 1980, a shell corporation known as Kingston Realty, Inc. (Kingston) was formed at the direction of the Philadelphia County District Attorney's Office and the Pennsylvania State Police as part of a joint undercover operation. The purpose of this operation was to expose, investigate and prosecute organized crime and public corruption in Philadelphia. The scope of the investigation included the Philadelphia police, Board employees and employees of other regulatory agencies who were suspected of permitting illegal activity to occur in restaurants and bars subject to Board supervision.[1] It must be noted, however, that the three appointed members of the Board were not suspected of any illegality, either directly or indirectly.

Kingston's sole officer at all times was Charles Kay, Jr., a Pennsylvania State Trooper, who used the alias Charles Kingston during the undercover investigation. In April of 1981, Trooper Kay, using this

---

[1] The scope of the investigation was especially targeted at those whose responsibilities related to the issuance and maintenance of liquor licenses.

alias, applied for a Retail Liquor License and Amusement Permit to dispense liquor at 2262 East Allegheny Avenue, Philadelphia, Pennsylvania. In keeping with the clandestine nature of the operation, the tavern would receive the romantic appellation, "Casablanca."

The Board approved the transfer of the liquor license[2] to Kingston on July 10, 1981, and on August 3, 1981, the restaurant opened for business. Trooper Kay and another State Trooper acted as bartenders and began to accumulate information pertinent to the investigation. On August 21, 1981, the restaurant was forced to close due to exposure of the undercover operation.

The Board notified Kingston of alleged violations of the Liquor Code[3] on October 16, 1981. The issuance of a citation putatively followed on November 18, 1981, although it was not reduced to writing until December 17, 1981, or actually served upon Kingston until January 13, 1982.

The citation alleged that Kingston had perpetrated a fraud upon the Board by furnishing false information in applying for the license and its renewal, that Kingston was not eligible to hold a restaurant liquor license since its sole corporate officer-stockholder-manager, Charles Kingston, a/k/a Charles Kay, Jr., held a public office (State Trooper) and that Kingston was not the only one pecuniarily interested in the operation of the licensed business.

Following an April 2, 1982, hearing before a Board designated Hearing Examiner, the Board, on June 3, 1982, revoked Kingston's license and directed forfeiture of its previously-filed surety bond. Kings-

---

[2] The liquor license was transferred from Kelly Ann's Tavern, Inc.

[3] Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. §§1-101-9-902.

ton appealed this determination. After a de novo hearing, the Court of Common Pleas reversed the Board's order. Hence, the instant appeal.[4]

"Our scope of review in liquor license revocation cases is limited to a determination of whether the court below committed an error of law or abused its discretion." *Mooney Liquor License Case,* 36 Pa. Commonwealth Ct. 288, 290, 387 A.2d 1009, 1010 (1978).

The Board argues that the use of an alias by the State Police Officer, the financing of the license by the City of Philadelphia, the subsequent operation of the licensed premises, and the concealment of all of the above from them was improper and violative of the Liquor Code. We disagree.

The use of undercover police investigations has been steadfastly approved by our courts. *See Lewis v. United States,* 385 U.S. 206 (1966), *reh'g. denied,*

---

[4] During the pendency of its appeal, the Board required Kingston Realty, Inc. and the City of Philadelphia to seek license renewal for the licensing year November 1, 1982, through October 31, 1983. To protect the license, and pursuant to the Board's demand, in the fall of 1982 the Philadelphia District Attorney's Office, acting on behalf of Kingston Realty, Inc. and the City of Philadelphia, forwarded to the Board an $840.00 check covering the demanded license renewal fees, as well as the required bond on which the District Attorney's Office acted as surety. On August 30, 1983, by letter, the Board directed the performance, on or before October 30, 1983, of the following license renewal-related matters: (1) The forwarding and payment of the specified fee ($840.00) for the year ending October 31, 1984; (2) The submission of a surety bond, executed by a bonding company, for a one-year term expiring on October 31, 1984; and (3) the submission of a like bond, expiring on October 31, 1983, based on the Board's belated determination that the bond previously submitted on September 28, 1982, was not acceptable.

The City sought judicial relief because the Board refused to waive the above requirements. On October 21, 1983, the Honorable JAMES CRUMLISH, JR., President Judge of this Court, directed the Board to renew the license, absent conformity with these requirements.

386 U.S. 939 (1967); *Brown v. Brierley,* 438 F.2d 954 (3d Cir.), *cert. denied,* 402 U.S. 997 (1971); *Commonwealth v. Morrison,* 275 Pa. Superior Ct. 454, 418 A.2d 1378 (1980), *cert. denied, Morrison v. Pennsylvania,* 449 U.S. 1080 (1981). "Criminal activity is such that stealth and strategy are necessary weapons in the arsenal of the police officer" to adequately enable him or her to perform the function of preventing crime and apprehending criminals. *Sherman v. United States,* 356 U.S. 369, 372 (1958).[5]

The most important function of government is the exercise of the police power for the purpose of preserving the public health, safety and welfare and, at times, to accomplish that purpose, it is necessary that certain regulations of the Board be superseded in an effort to elminate conduct which is *malum in se.*

In the instant case, all of the actions taken in connection with the undercover operation were a legitimate exercise of the police power in an attempt to eradicate one of the most pervasive and elusive evils in our society today. Secrecy, even from the Board, was essential for the effectiveness, success and safety of the operation.[6]

It must be further noted that since the City of Philadelphia provided all of the funds for the purchase of the restaurant business and the liquor license, any

[5] In addition, Section 104 of the Liquor Code, 47 P.S. §1-104, provides that

[it] *shall be deemed an exercise of the police power of the Commonwealth for the protection of the public welfare, health, peace and morals of the people of the Commonwealth* and to prohibit forever the open saloon, and all of the provisions of this act shall be liberally construed for the accomplishment of this purpose. (Emphasis added.)

[6] It is unfortunate to note that, as of the preparation of this opinion, a similar operation by the Federal Bureau of Investigation has resulted in the criminal convictions of 17 members of the Philadelphia Police Department, including a former Deputy Commissioner.

128

forfeiture would only penalize the taxpayers of the City of Philadelphia. This would further serve to derogate the Liquor Code's stated purpose of protecting the "public welfare."

Accordingly, we affirm the order of the Court of Common Pleas.

ORDER

AND Now, November 21, 1984, the order of the Court of Common Pleas dated September 8, 1982, is hereby affirmed.