599 A.2d 988

**COMMONWEALTH of Pennsylvania**

v.

**Ernest P. DANIELS, III, Appellant.**

Superior Court of Pennsylvania.

Submitted April 18, 1991.

Filed Nov. 8, 1991.

Reargument Denied Jan. 6, 1992.

James R. Wilson, Asst. Public Defender, Pittsburgh, for appellant.

Kevin F. McCarthy, Asst. Dist. Atty., Pittsburgh, for Com.

Before McEWEN, DEL SOLE and FORD ELLIOTT, JJ.

DEL SOLE, Judge:

Appellant, Ernest P. Daniels, III, has taken this appeal from the judgment of sentence to a term of imprisonment of from five years to ten years imposed after he was found guilty, following a non-jury trial, of violation of the Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. §§ 780–102 *et seq.*, specifically, possession of cocaine with the intent to deliver. The trial court denied the post-verdict motions of Appellant and this appeal followed.

On appeal, Mr. Daniels raises one issue for review, whether the trial court erred in failing to suppress the cocaine found in his possession after his hand luggage was searched by Allegheny County Police Officers in Greater Pittsburgh International Airport Terminal.

A suppression hearing was held prior to trial, and the trial court denied the motion to suppress, on the grounds that: (1) that the officers did not conduct a "Terry stop", but their questioning of Appellant was merely a citizen encounter, and (2) Appellant's consent to the search of his carry-on bag was freely and voluntarily given.

The record reveals that Appellant was approached by two police officers in the main concourse of the airline terminal. The officers had received information from an airline employee that Mr. Daniels had purchased a round-trip ticket to New York's LaGuardia Airport with cash, and that he had made reservations on flights which indicated that Appellant would be in New York for approximately four hours. The officers were using a drug courier profile based on such factors as cash paid tickets of short duration to a known narcotics distribution center such as New York, and casual dress rather than business attire, as grounds for monitoring the movements of Appellant in the terminal.

After Appellant deplaned, he walked at a brisk pace looking from side to side. As he approached the exit he was stopped by the officers who identified themselves and asked to see some identification. At this point the officers ascertained that Appellant was not travelling under an alias, and that his identification was all in order. Following this encounter, the trial court found that Appellant gave consent to a search of his hand luggage. We, however, hold that this finding of voluntary consent to search is not supported by the evidence.

■ It is clear from the record that when first asked, Appellant refused to consent to a search. Then after this refusal, the officers asked if he was embarrassed to be searched in public, and he agreed he was. He was then escorted to the interdiction office. (N.T. February 2, 1990, at 15, 35). The officers' conduct indicated that the only choice Appellant had was either to be searched in public or searched in private to avoid public embarrassment. Therefore, we cannot justify a finding that Appellant voluntarily consented to a search in the drug interdiction office.

■ Because we conclude that Appellant did not voluntarily consent to accompany the police officers into the drug interdiction office, we hold that Appellant was illegally detained in the interdiction office at the time he signed a consent-to-search form allowing the officers to open and search his shoulder bag. Consequently, the cocaine found in the Appellant's shoulder bag was inadmissible even though he consented to the search once he was in the interdiction room, because it was the product of an illegal detention, and not the result of an independent act of free will. *See, Florida v. Royer*, 460 U.S. 491, 501, 103 S.Ct. 1319, 1326, 75 L.Ed.2d 229 (1983), *citing, Dunaway v. New York*, 442 U.S. 200, 218–219, 99 S.Ct. 2248, 2260–2261, 60 L.Ed.2d 824 (1979).

The facts in *Royer, supra,* are in several ways remarkably similar to those of our case. In *Royer* the Appellant was questioned by detectives in an airline concourse because he fit the drug courier profile.[1] Upon request, but without oral consent, Appellant produced his airline ticket and driver's license, which carried his correct name. He was asked to accompany the detectives to a small room for questioning, but his license and ticket were retained by the police, and his baggage was retrieved from checked lug-

1. The drug courier profile is not a "national profile." Profiles vary from city to city, airport to airport, and also depending on which law enforcement agency is using them. The profile is subject to racial abuse and gender stereotyping, where the fact that a person is an African–American, Columbian, or Hispanic has appeared as a profile characteristic, as has the fact that the person was the only woman on an airplane carrying business travelers. *Commonwealth v. Lidge*, 399 Pa.Super. 360, 582 A.2d 383 (1990). A breakdown of profile traits listed in the reported decisions reveals that it encompasses such contradictory characteristics as deplaning first and deplaning last, paying with small bills and paying with large bills. It also encompasses an extraordinary amount of innocent behavior such that the average airline traveler would be hard-pressed to not display at some time during a trip. Furthermore, it is not clear whether the display of one or two characteristics is sufficient to fit the profile, or whether if some characteristics carry greater weight than other characteristics such that the display of one of these weightier characteristics may trigger an airport stop. Note, The Drug Courier Profile and Airport Stops: Reasonable Intrusions or Suspicionless Seizures? 12 *Nova.L.Rev.* 273, 288–296.

gage. While in this small room he consented to the search of his luggage. The Supreme Court held:

> What had begun as a consensual inquiry in a public place had escalated into an investigatory procedure in a police interrogation room, where the police, unsatisfied with previous explanations, sought to confirm their suspicions ... [H]e reasonably believed that he was being detained. At least as of that moment, any consensual aspects of the encounter had evaporated, and we cannot fault the Florida District Court of Appeal; for concluding that *Terry v. Ohio* and the cases following it did not justify the restraint to which Royer was then subjected. *Royer, supra.*, 460 U.S. at 503, 103 S.Ct. at 1327.

In the instant case, like *Royer*, Appellant allegedly fit the drug courier profile. However, he was not travelling under an assumed name. In fact when this was ascertained by the officers their suspicions became less reasonable, because they were less particularized. Also, as in *Royer*, Appellant "reasonably believed" that he was not free to go. In *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980), the Supreme Court held, "We conclude that a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."

In the present factual situation, in view of the all the surrounding circumstances, we hold that it was reasonable for Mr. Daniels' to believe he was not free to leave, and therefore the search constituted a violation of his Fourth Amendment rights. Appellant never consented to accompany the officers to the interdiction office, and therefore the consent to search given by Appellant, while he was in the office, was the product of an illegal detention, and was therefore invalid. Consequently, the fruits of this primary illegality, the illegal detention, should have been suppressed. *Dunaway, supra.*

Furthermore, we hold that the illegal search and seizure was not justified on traditional "Terry stop" reasoning, because, (1) the police did not have "reasonable suspicion" that Appellant was engaged in criminal activity, and (2) even if there were reasonable suspicion, this did not justify a non-consensual search of Appellant's luggage.

The Supreme Court, in *United States v. Sokolow*, 490 U.S. 1, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989), has recently held that in evaluating the reasonableness of a stop, the courts must look to, "the totality of the circumstances—the whole picture." In *Sokolow*, respondent purchased two round-trip tickets from Honolulu to Miami, and paid $2,100 from a large roll of $20 bills. The ticket agent noted that Mr. Sokolow appeared nervous, and that he was wearing a black jumpsuit with gold jewelry. Respondent gave his name as Andrew Kray and neither he nor his travelling companion checked any baggage.

After Mr. Sokolow returned to Honolulu, he was seized by DEA agents and escorted to the DEA office in the airport. A narcotics detector dog sniffed Mr. Sokolow's luggage and alerted to the respondent's shoulder bag in the office. Appellant was advised of his rights, and the agents obtained a warrant to search the shoulder bag. They found no illicit drugs, but the bag did contain several suspicious documents indicating respondent's involvement in drug trafficking. The agents had the dog reexamine the remaining luggage, and this time the dog alerted to a medium-sized bag. It was too late to get a warrant to search this bag, but respondent returned home and the agents retained the bag. The next morning a warrant was issued and the bag was opened revealing over 1,000 grams of cocaine.

The *Sokolow* court determined that the information from the respondent's activities which conformed to the drug courier profile and such other activities, such as appearing nervous and looking around the waiting room during a stopover in Los Angeles, constituted, "in the totality of the circumstances" reasonable suspicion. Although, it reversed the court of Appeals, stating that both "probabilistic evi-

dence", such as evidence available from a drug courier profile, and evidence of "ongoing criminal behavior", have equal evidentiary significance, nonetheless, each case must be evaluated on a case by case basis as, "the concept of reasonable suspicion is not readily, or even usefully, reduced to a neat set of legal rules." *Id.*, 109 S.Ct. at 1585.

In the case before us, the officers had evidence which showed that Appellant fit the drug courier profile to the extent that he paid in cash and was travelling for a short duration to a source city. However, it was ascertained that he was not travelling under an assumed name as soon as the officers approached Appellant. Evidence that Appellant looked from side to side, is certainly not indicative of anything, nor is it even suggested that this behavior conforms to the drug courier profile. In fact, we do not know what the profile consists of, or to what degree the profile accurately identifies persons carrying drugs. Rather, all we do know is that when the officers determined that Appellant was not travelling under an assumed name, their suspicions should have been allayed. Therefore, in the totality of the circumstances, we hold that the officers did not have reasonable suspicion to detain Appellant.

However, assuming *arguendo*, that there was reasonable suspicion to justify a *Terry* stop, the non-consensual search of Appellant's hand luggage was certainly not justified under *Sokolow*. In *Sokolow*, the Court held that since the seizure or *Terry* stop in question was justified by reasonable suspicion, the DEA agents could employ a narcotics detection dog to immediately conduct a canine sniff test. *See, United States v. Place*, 462 U.S. 696, 705, 103 S.Ct. 2637, 2644–2645, 77 L.Ed.2d 110 (1983), (exposure of luggage to a trained canine did not constitute a search within the meaning of the Fourth Amendment). It was only after the dog alerted to a particular piece of luggage, that there was probable cause to obtain a warrant.

Here, there was no canine sniff prior to the search of Appellant's luggage, and no probable cause to obtain a

warrant in order to open and examine the contents of the bag. As we have stated above, since there was no valid consent given for the search of Appellant's hand luggage, such search can not be justified by the Court's holding in *Sokolow*, even assuming there was reasonable suspicion to stop Appellant.

Therefore, we hold that the seizure of Appellant and the search of his luggage was effected in derogation of his Fourth Amendment rights, and the cocaine seized should have been suppressed.

Judgment of sentence is vacated and this case is reversed and remanded. Jurisdiction is relinquished.

McEWEN, J., dissents.