678 A.2d 789

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Christopher Pet DUNKLEY.**

Superior Court of Pennsylvania.

Submitted April 1, 1996.

Filed June 6, 1996.

Bradley Hillman, Assistant District Attorney, Williamsport, for Commonwealth, appellant.

Mark Cichowicz, Public Defender, Williamsport, for appellee.

Before CAVANAUGH, KELLY and BROSKY, JJ.

BROSKY, Judge.

The Commonwealth of Pennsylvania ("Commonwealth") appeals from the September 27, 1995 trial court order granting defendant-appellee Christopher Dunkley's motion to suppress evidence.

On March 1, 1995 the local police department in Williamsport, PA learned from a confidential informant that two pounds of cocaine could be found in a room facing the courtyard of the Days Inn Motel in Williamsport; the Williamsport Police informed Lycoming County Detective Todd Prough.

On March 2, 1995, at approximately 7:55 a.m., Pennsylvania Attorney General's Bureau of Narcotics Investigation and Drug Control Agents Joseph Byerly and Gordon Mincer and Detective Prough went to the Days Inn; the police narrowed their search to Room 154 at the motel (Agent Byerly testified that surveillance on March 1, 1995 indicated that the drugs were located in that room, as were two black males and one white female; however, Agent Byerly's Suppression Hearing testimony did not reveal the nature of the March 1, 1995 surveillance nor the rationale for narrowing the focus to Room 154 of the motel).[1] Agent Byerly testified that the police wanted to "do a consent search of the room since we did not have enough information to obtain a search warrant." N.T.,

---

1. The only person to testify at the Suppression Hearing was Agent Byerly. He testified that he had no personal knowledge regarding the reliability of the confidential informant who had originally told the Williamsport Police that cocaine could be found at the Days Inn Motel in Williamsport. N.T., 8/10/95, at 5.

8/10/95, at 5. Agents Byerly and Mincer posed as maintenance workers [2] and knocked on the door of Room 154.[3]  *Id.* at 7, 12. Appellee answered the door (dressed only in his underwear) and the agents, posing as maintenance men, told him that they "were there to investigate a leak in the bathroom."  *Id.* at 8. Appellee permitted the "maintenance men" to enter; he returned to his bed.  The agents did not notice any other individuals in the "sleeping area" so they proceeded to the bathroom to make sure that it was empty.  *Id.* at 13.  The bathroom was empty and the agents flushed the toilet and, continuing their "charade as maintenance men", discussed the bathroom water pipes.  *Id.* While inside of the bathroom the agents observed three, ¼ inch, clear, empty plastic bags, similar to the type that they had previously seen used for packaging drugs in unrelated drug investigations.

The agents then re-entered the bedroom area and identified themselves as police officers; they ordered appellee to get out of bed.  Appellee was still dressed only in his underwear. They told appellee that they "had information that there was approximately two pounds of cocaine in the room, and possibly a drug deal taking place."  *Id.* at 14.  Appellee initially denied that there were any drugs in the motel room.  The agents then told appellee about the three empty baggies that they had discovered.  Appellee then stated that "he smoked marijuana and had some, . . . in his pants pocket, and [that the police] could have it."  *Id.* at 15.  Detective Prough then entered Room 154 and removed approximately five grams of marijuana from appellee's trousers.

Detective Prough brought a "Consent to Search" form and he presented to appellee; appellee was told that he had a right to refuse consent for a search.  Appellee signed the form and

2.  Byerly testified that he and Mincer feared for their safety and did not want to identify themselves as police officers; the officers assumed that since the occupants of the room were suspected drug dealers, then they were probably armed and a potential threat to the officers.

3.  Detective Prough waited at a location that was not visible from the inside of Room 154.

a subsequent search of the room revealed 255 grams of cocaine.[4] Appellee was charged with possession of a controlled substance (cocaine), possession with intent to deliver a controlled substance (cocaine), possession of a controlled substance (marijuana) and possession of drug paraphernalia (pipes and baggies).

Appellee filed a motion to suppress all of the evidence seized (drugs and drug paraphernalia), alleging that "the deception used by law enforcement personnel invalidated his consent to enter his motel room", and, that "his subsequent consent to search his metel [Sic] room is either tained [Sic] from the initial unlawful entry or was not given willfully." Appellee's Motion to Suppress, 5/13/95, at pars. 11, 12. The trial court held a hearing and subsequently granted the motion to suppress the evidence seized. The Commonwealth then filed the instant appeal.

The Commonwealth claims on appeal that,

1. The lower court erred by granting the defendant's motion to suppress the evidence as defendant's consent to search was not vitiated when law enforcement officers entered his motel room by a ruse without a search warrant.

Commonwealth's Brief at 9. We affirm the order of the trial court.

Our Court stated in *Commonwealth v. Torres*, 429 Pa.Super. 228, 632 A.2d 319 (1993),

In reviewing an order granting a motion to suppress, an appellate court may consider only the evidence of the defendant's witnesses and so much of the Commonwealth's evidence that, read in the context of the record as a whole, remains uncontradicted. Furthermore, our scope of appellate review is limited primarily to questions of law. We are bound by the suppression court's findings of fact if those findings are supported by the record. Factual findings

---

4. The cocaine was found "in a shaving kit which was inside a bag on the floor between the two beds." N.T., 8/10/95, at 21.

wholly lacking in evidence, however, may be rejected. [Citations omitted.]

*Id.* at 230, 632 A.2d at 320.

The Commonwealth avers that their "deception or ruse" in gaining entrance to appellee's motel room was permissible, and it cites to *Commonwealth v. Haynes,* 395 Pa.Super. 322, 577 A.2d 564 (1990) and *Commonwealth v. Reiss,* 440 Pa.Super. 151, 655 A.2d 163 (1995), affirmed (by an evenly divided Supreme Court) at No. 70 M.D. Appeal Docket 1995 (March 18, 1996). The Commonwealth also avers that appellee's subsequent consent for the search of the room was voluntary.

In cases involving police deception,

[t]he common thread is that the deception must not pertain to the consent itself, in some sense it must be collateral to the content of the permission voluntarily granted. Thus, the accused must know what is being consented to, and if the police exceed the scope of that consent, then they have passed their limits of permissible deception. This is consistent with the line of cases which have held that if the accused does not understand what it was that was consented to, then the consent is invalid.

*Commonwealth v. Reiss,* 440 Pa.Super. 151, 157, 655 A.2d 163, 166 (1995), quoting from *Commonwealth v. Haynes,* 395 Pa.Super. 322, 337, 577 A.2d 564, 572 (1990).

Our Court stated in *Commonwealth v. Moye,* 402 Pa.Super. 81, 586 A.2d 406 (1990), "The Fourth Amendment protections against official intrusion are inapplicable where the intrusion is consensual; and, consent is not vitiated though obtained by stratagem or deception." *Id.* at 84, 586 A.2d at 408.

In *Haynes, supra,* the Pittsburgh Police suspected the accused of a murder but did not have probable cause to arrest him. They knew of an outstanding bench warrant but could not arrest him in Wilkinsburg, PA, which was outside of their jurisdiction. They therefore went to the location that he was staying in Wilkinsburg and asked him if he would accompany them to the Public Safety Building in Pittsburgh "to clear up this warrant problem." *Id.* at 334, 577 A.2d at 570. The

accused complied, but as soon as they reached the Public Safety Building the accused was placed in an interrogation room and advised of his constitutional rights; the police questioned him about the murder. The accused then gave inculpatory statements regarding the murder. Our Court held that the police deception in obtaining the accused's presence at the Public Safety Building "was impermissible and the consent was invalid because it pertains to the content of the consent itself"; the accused "was taken into custody illegally." *Id.* at 338, 577 A.2d at 572.

Our Court in *Haynes* discussed several examples of police deception: In *Commonwealth v. Morrison,* 275 Pa.Super. 454, 418 A.2d 1378 (1980), an undercover agent misrepresented his identity to gain access to an accused's barn. Once inside, the agent observed marijuana. The agent then properly obtained a search warrant for the barn. *Id.* But if an accident victim consents to a blood test with no notice of the criminal investigative purpose of the test, the consent for the blood test is invalid. *Commonwealth v. Walsh,* 314 Pa.Super. 65, 460 A.2d 767 (1983). If an informant deceives an accused of his or her identity and gains access to the room in which the accused is present, any illicit conversation, that the accused is engaged in and the informant overhears, can be testified to by the informant since the "deception is collateral and permissible." *Hoffa v. United States,* 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966). But if an informant deceptively gains access to an accused's office, and the informant searches the office (and takes items) when the accused leaves for a few minutes, "the deception pertains to the consent itself, and the informant exceeded the scope of the consent." *Gouled v. United States,* 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647 (1921).

In *Commonwealth v. Reiss, supra,* a defendant agreed to cooperate with police in an investigation regarding stolen computer equipment. The defendant, who was acquainted with the accused, told police that the accused had been involved in the burglaries. The defendant brought an undercover officer to the accused's apartment and introduced the officer as his "cousin". While the defendant and accused

conversed, the officer noticed computer equipment which matched the description of equipment that had been reported stolen. After the defendant and the officer left the apartment, the officer notified other officers of the computer equipment in the accused's apartment. The police returned to the accused's apartment, informed him that they were there to investigate stolen computer equipment and asked if the accused would consent to a search of his apartment. The accused was given his *Miranda* rights and he read and signed a consent to search form. The stolen computer equipment was then seized. Our Court held that although the accused was deceived by the undercover officer's initial entry, no evidence was gathered at that point. *Commonwealth v. Reiss, supra.* A warrant was not obtained, and no incriminatory items were seized during the initial entry. *Id.* The officer left and returned with other officers, this time advising the accused of their purpose for being there. The accused then voluntarily consented to the search; hence, it was proper and any items seized would not be suppressed. *Id.*

We find that, in the instant case, regardless of the fact that there was no Suppression Hearing testimony regarding the reliability of the confidential informant or the nature of the investigation that occurred on March 1, 1995, that Agents Byerly and Mincer properly entered appellee's motel room. They used their deception, posing as maintenance workers, to enter appellee's motel room; appellee consented to their entry. *Commonwealth v. Reiss, supra; Commonwealth v. Haynes, supra.* The agents' entry, even into the bathroom, did not exceed the scope of appellee's consent. *Id.* Appellee understood that to which he consented. *Id.* Although the agents noticed three empty baggies in plain sight, no search of the motel room occurred (other than for potential occupants besides appellee) and no seizures occurred prior to second encounter with appellee.

Although the agents were properly inside of the motel room, once they apprised appellee of their discovery of the empty baggies they foreclosed any possibility that a lawful

search of the room could occur. If they had simply said to appellee that they had reason to suspect that cocaine was in the room and would like his consent to search, and they were given consent, then the search may have been proper. The agents did tell appellee that they were police officers and that they suspected that there was cocaine in the room but appellee denied that there were any drugs in the room. The agents then confronted appellee with their discovery of the three empty baggies. At this point they had utilized their prior deception (as maintenance workers) to gather evidence (even though the baggies had not been seized at that point), and this exceeded the scope of the consent that appellee had given to them when he gave them permission to enter the motel room. *Id.*

The agents should never have mentioned the empty baggies.[5] Once they did, they set in motion a chain of events that led to the discovery of the marijuana, the cocaine and the drug paraphernalia. When appellee was confronted with the discovery of the baggies he admitted to his possession of marijuana; the marijuana was then improperly seized. At this point he was standing in his underwear, confronted with three police officers who were presenting him with a "Consent to Search" form. Our Court stated in *Commonwealth v. Washington,* 438 Pa.Super. 131, 651 A.2d 1127 (1994),

> It is well settled that if a person voluntarily consents to a search, evidence found as a result of that search is admissible against him. The consent, however, must be given freely, specifically, unequivocally, and voluntarily. The question whether a consent to search was in fact voluntary or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all

5. The agents were acting responsibly and competently when they observed the empty baggies; they were performing their duties thoroughly and are to be commended. But they should have kept knowledge of this discovery to themselves until appellee had given voluntary consent to a search. The agents' knowledge of the existence of the baggies should not have been utilized in any way to compel appellee to admit if any drugs were in the room, or, to compel appellee to consent to a search of the room.

the circumstances. The burden of proving a valid consent to search rests upon the Commonwealth.

The fact that a defendant has been placed under arrest and that he has not been informed of his constitutional rights, although factors which must be considered, do not constitute per se a barrier to a finding that consent to search was voluntarily given. [Citations omitted.]

Id. at 136–37, 651 A.2d at 1130. We find that the agents' improper mention of their discovery of the empty baggies, which led to appellee's admission that he possessed marijuana and the improper seizure of the marijuana, created a situation whereby appellee, when asked to sign the "Consent to Search" form, was coerced into consenting to the search. Hence, the subsequent discovery and seizure of the cocaine and drug paraphernalia was also improper.

Since all of the evidence was improperly seized in the instant case, we find the Commonwealth's issue to be without merit and we affirm the trial court Suppression Order.

Order affirmed.

CAVANAUGH, J., concurs in the result.

KELLY, J., files a concurring opinion.

KELLY, Judge, concurring.

I concur in the result. I write separately, however, to dissociate myself from the paradigm suggested in the lead Opinion as being acceptable search and seizure behavior.

To date, the Courts of Pennsylvania have accepted entrance and seizure by subterfuge in the following situations: 1) a police officer gains access, observes contraband or illegal activity in plain view, leaves, and then obtains a warrant, *Commonwealth v. Morrison*, 275 Pa.Super. 454, 418 A.2d 1378 (1980) (*en banc*); 2) a police officer gains access, observes contraband or illegal activity in plain view, leaves, and then obtains consent to enter, *Commonwealth v. Reiss*, 440 Pa.Super. 151, 655 A.2d 163 (1995), *affirmed by equally divided court*, 543 Pa. 479, 672 A.2d 784 (1996); and 3) a police officer

gains access, observes contraband or illegal activity in plain view, leaves for the purpose of immediately obtaining backup assistance and then together reenter after having identified themselves as police officers, *Commonwealth v. Moye*, 402 Pa.Super. 81, 586 A.2d 406 (1990).

In each of the above cited cases the officer, after having gained entry, observed contraband in plain view and then left the premises prior to returning and effectuating the arrest These factors provide some objective criteria to allow a reviewing court to evaluate the conduct of the officers. In this case, the officers neither observed contraband nor exited the premises prior to obtaining defendant's consent. In the paradigm suggested by the lead Opinion, officers may enter a premises by subterfuge, and based on unverifiable suspicion, attempt to obtain the defendant's consent. This poses a far more fluid situation than previously permitted, and would blur established lines for evaluating the legitimacy of a seizure obtained as a result of subterfuge.

CAVANAUGH, J. concurs in the result.